(No. 63237.

*In re* MICHAEL GEORGE CHERONIS, Attorney, Respondent.

*Opinion filed December 19, 1986.*

528

William F. Moran III, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for respondent.

JUSTICE MILLER delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against the respondent, Michael G. Cheronis, on June 19, 1984, alleging that the respondent failed to preserve the identity of client funds and wrongfully commingled and converted client funds. Additionally, the complaint alleged that the respondent failed to pay over to a client funds to which the client was entitled, engaged in conduct involving fraud, deceit, misrepresentation, and moral turpitude, and prejudiced or damaged a client during the course of a professional relationship. Following a hearing, the Hearing Board found that the respondent commingled his client's funds with his own. Concluding that the respondent's conduct was not dishonestly motivated, the Hearing Board recommended that the respondent be censured.

The Administrator filed exceptions to the report and recommendation of the Hearing Board with the Review

Board of the Attorney Registration and Disciplinary Commission. The Review Board found that, on the basis of the facts admitted by the respondent, the respondent had both commingled and converted client funds. The majority of the Review Board recommended that the court suspend the respondent from the practice of law for six months. Two members of the Review Board stated that they would recommend a one-year suspension. The respondent filed in this court exceptions to the recommendation of the Review Board.

The respondent was licensed to practice law on November 27, 1972. In late 1980 or early 1981, the respondent undertook the representation of John Venturella, who was a defendant in two criminal proceedings. Following the advice of respondent, on August 3, 1982, Venturella pleaded guilty in the circuit court of Cook County to one of the charges against him. While discussing the plea, Venturella and respondent agreed that respondent would retain, as his fee, one half of the $4,500 that was to be returned to Venturella from Venturella's $5,000 bond deposit. Respondent agreed to hold Venturella's half of the bond refund for him until Venturella was released from prison. Because he was unable to obtain cigarettes for Venturella before Venturella was incarcerated, respondent sent Venturella $100 for prison commissary.

Thereafter, upon receiving a check for the bond refund from the clerk of the circuit court, respondent deposited the check into his combined business and personal bank account on August 21, 1982. This account, which was not a client escrow or trust account, was used for personal and business obligations. Within three weeks of depositing the bond money into his account, the respondent had overdrawn the account.

Within a month or two after receiving the bond refund and depositing it in his account, the respondent re-

ceived a letter from Venturella instructing him that respondent was to pay $250 of the bond refund to a person to whom Venturella was indebted; the letter instructed that the balance of Venturella's portion of the bond refund was to be paid over to Venturella's father. Respondent wrote to Venturella in January 1983, stating that "the first $500 is on the way." Earlier that month or late in the preceding month, the respondent had learned that Venturella had, on November 29, 1982, filed with the Attorney Registration and Disciplinary Commission a charge against the respondent in connection with not tendering the funds. (See Rules of the Attorney Registration and Disciplinary Commission, Rules 2(b), 52.) Respondent admitted before the Hearing Board that, although he paid the $250 debt from Venturella's funds, he did not forward any portion of the balance of the money to Venturella's father.

After Venturella was released from incarceration in the early months of 1983, he visited respondent's office to arrange representation in another matter, and the subject of the bond refund was discussed. Subsequently, respondent paid Venturella $150 on March 11, 1983, and paid him $878.50 on March 28, 1983. Although the respondent was uncertain of the exact date, he repaid Venturella the balance of the amount owed him in the succeeding few months. In addition to having retained respondent to represent him in another matter soon after his release, Venturella has retained respondent to represent him on two other occasions since filing the complaint in the present case; Venturella also referred clients to the respondent for representation after the complaint was filed.

The respondent testified before the Hearing Board that, at the time he agreed to represent Venturella, Venturella stated that he would also pay respondent's fee for representing Venturella's codefendant, Sonny Cales.

Venturella subsequently repudiated the agreement to pay respondent's fee for representing Cales. Although the record does not indicate when the agreement was repudiated, the respondent stated that his fee for representing Cales amounted to $1,375. The respondent submitted that he had not attempted to collect this fee from either Venturella or Cales, and that he did not intend to pursue the fee in the future. The respondent admitted, rather, that Venturella was entitled to the entire $1,900 remaining with the respondent after the respondent had given $100 to Venturella for prison commissary and paid Venturella's $250 debt.

Throughout the period of the respondent's representation of Venturella, the respondent was beset with severe financial difficulties. He and his wife had invested in a 13-unit apartment building; this investment failed, and the respondent and his wife lost both the apartment building and their home to creditors. Between the time of the deposit of Venturella's refund check and the final payment to Venturella, respondent's business account, the account into which the bond refund check had been deposited, was overdrawn on approximately 19 occasions. The account respondent maintained jointly with his wife was also overdrawn on occasion. During February of 1983, the respondent filed for bankruptcy, listing approximately $500,000 in debts.

In addition, during 1982 through 1984 the respondent and his family experienced great emotional distress. The respondent stated before the Hearing Board that he had received three phone calls in January, 1982, threatening his death. In connection with the death threats, there was, according to the respondent, an unsuccessful attempt to kidnap respondent's wife and two of their children. Respondent submitted that he and his wife received periodic counseling from a clinical psychologist in order to adjust to these troubling circumstances.

The respondent testified before the Hearing Board that, until he received the complaint against him in the present case, he was not aware that the Code of Professional Responsibility required attorneys to maintain clients' funds separately from their own. The respondent had on occasion, however, held clients' funds for them in a safety deposit box, apparently unaware that this practice has been described by this court as highly unprofessional. *In re Lingle* (1963), 27 Ill. 2d 459.

Soon after receiving notice that Venturella had filed a complaint against him with the Disciplinary Commission, the respondent examined the Code and opened and maintained a separate client trust fund account. The respondent conceded that this trust account had shown a negative balance in a few instances, but indicated that the overdrafts were in small amounts and existed for very short periods of time. The respondent explained that the overdrafts resulted from bank charges and from bank deposits being made late in the day which were not credited to his account until after checks drawn on the account had already been presented for payment. No check issued to a client from this account had ever been returned for lack of sufficient funds in the account.

The Hearing Board, in its written report, noted that the respondent admitted every allegation in the Administrator's complaint, except the conclusions that the respondent had violated various provisions of the Code of Professional Responsibility. Based upon the respondent's testimony, the Hearing Board found that, until Venturella filed the complaint, the respondent was not familiar with the requirements of the Code of Professional Responsibility regarding segregation of client funds, and had never had a clients' trust account. At the hearing, the respondent admitted his noncompliance with the Code, and regretted his error. Two attorneys called as character witnesses on behalf of the respondent testified that the

respondent had an excellent reputation for honesty and integrity. The Hearing Board found that the respondent made full restitution to his client, had no prior disciplinary difficulties, and has done substantial amounts of *pro bono* work. The Hearing Board found that the respondent's actions constituted improper commingling of client funds; the board concluded, however, that the respondent had no dishonest motive underlying his conduct. Accordingly, the Hearing Board recommended that the respondent be censured by this court. The Administrator filed exceptions to the report and recommendation of the panel.

On the basis of the facts established before the Hearing Board, the Review Board concluded that the respondent had both commingled and converted his client's funds. Although the Review Board questioned whether the respondent knew of the requirement that client funds be segregated, the Review Board agreed that dishonesty was not a motivating factor in the respondent's actions. The Review Board recommended to this court that the respondent be suspended from the practice of law for six months. Two members of the review panel recommended a one-year suspension.

The facts admitted by the respondent demonstrate that during the period in question the respondent both commingled and converted his client's funds. The respondent ignored the duty imposed by Rule 9—102(a) of the Code of Professional Responsibility (103 Ill. 2d R. 9—102(a)) to deposit his client's trust fund in a separate, identifiable trust account. The respondent conceded that not only was the balance of the account in which the money was held for Venturella below the amount respondent owed Venturella, but that the account was often overdrawn. The respondent converted his client's funds when he allowed the balance in the account in which the client's funds were held to become less than the amount owed the client. (See *In re Young* (1986), 111 Ill. 2d 98; *In re Clay-*

*ter* (1980), 78 Ill. 2d 276; but see *In re Freel* (1982), 89 Ill. 2d 263.) In addition, the respondent failed to send his client's funds promptly as requested, and required a period of time to make complete restitution to the client.

Although the respondent explained to the Hearing Board that he was unaware of the Code of Professional Responsibility requirement that client's funds must remain segregated, his lack of knowledge does not excuse his conduct. A common maxim holds that ignorance of the law is no excuse, and this is particularly true in a case where the person who claims lack of knowledge of a relevant directive is a practicing attorney. It is a paramount obligation of each member of the bar to study the Code of Professional Responsibility and abide by its terms and principles. This court has stated repeatedly that commingling or conversion of clients' funds will not be countenanced. (See, *e.g., In re Young* (1986), 111 Ill. 2d 98; *In re Cohen* (1983), 98 Ill. 2d 133; *In re McLennon* (1982), 93 Ill. 2d 215; *In re Grant* (1982), 89 Ill. 2d 247; *In re Clayter* (1980), 78 Ill. 2d 276.) Commingling and conversion are grounds for suspension (*In re Cutrone* (1986), 112 Ill. 2d 261; *In re Webb* (1985), 105 Ill. 2d 360), or, absent mitigating circumstances, disbarment (*In re Woldman* (1983), 98 Ill. 2d 248; *In re Feldman* (1982), 89 Ill. 2d 7).

While each case of attorney misconduct is unique and requires an independent evaluation of its relevant circumstances (see *In re McLennon* (1982), 93 Ill. 2d 215), predictability and fairness require consistency in the sanctions imposed for similar conduct. (*In re Hopper* (1981), 85 Ill. 2d 318.) The respondent contends that *In re Young* (1986), 111 Ill. 2d 98, is closely analogous to the present case and mandates censure here. In *Young*, the respondent received from a client approximately $3,200 to be held in escrow. The respondent deposited the money in his personal business account, rather than in a client's trust account or an escrow account. The balance in the

account fell below the amount owed the client, and at least once the account was overdrawn. Finding that the respondent had commingled and converted his client's funds, this court ordered the respondent censured. Several mitigating factors weighed against a more severe sanction: there was a *bona fide* dispute between the client and other parties to a real estate transaction which justified the attorney's retention of his clients' money, the attorney had not had a dishonest motive, the attorney was candid with the Hearing Board and demonstrated a repentant attitude, and the attorney had sufficient other assets to repay the money to his clients. See *In re McLennon* (1982), 93 Ill. 2d 215.

In the present case, the respondent admitted that he had never had a clients' account or an escrow account. The respondent commingled his client's funds with his own, and converted these funds to his own use. Commingling and conversion of client funds, even absent a dishonest motive, present a substantial risk of harm to the client (see *In re Clayter* (1980), 78 Ill. 2d 276), especially if committed at a time when the attorney is experiencing severe financial difficulties. Unlike in *Young*, the respondent here knew that he was in significant danger of bankruptcy. By commingling and converting his client's funds, the respondent jeopardized the client's ability to recover money rightfully his, and made the client's ability to obtain the funds subject to the respondent's questionable ability to pay. When the client finally inquired in person about the money owed him, the respondent did not immediately tender the funds to the client in a lump sum, but paid his debt to the client in installments over a period of months. Because the respondent put his client at substantial risk, in light of respondent's financial difficulties, of not being able to recover funds entrusted to the respondent, we believe the respondent's conduct warrants a period of suspension. See Standards for Imposing Lawyer

Sanctions 35-37 (1986).

The Administrator argues that this court's decisions in *In re Bloom* (1968), 39 Ill. 2d 250, and *In re Bizar* (1983), 97 Ill. 2d 127, support a lengthy suspension of the respondent. We do not agree. In *Bloom* and *Bizar*, this court suspended for one year attorneys who commingled and converted client funds. In both cases, however, the conduct underlying the suspensions was more egregious than the respondent's conduct in the instant case, as the clients in *Bloom* and *Bizar* were forced to obtain separate counsel to collect funds rightly due them from their original attorneys. In addition, money was withheld from the clients for years, and required substantial efforts to recover.

A number of mitigating factors weighing in the respondent's behalf suggest that a period of suspension shorter than that imposed in *Bloom* and *Bizar* is appropriate here: the hearing and review boards found no dishonest motive; the respondent cooperated fully with the Administrator and the Hearing Board, readily producing all documents requested and admitting all improper acts of which he was accused; the respondent expressed remorse over his misdeeds and promptly opened a client trust account; the respondent has made full restitution to the client; and the respondent has performed a great deal of *pro bono* legal work and had a good reputation in the community. In addition, we find significant the fact that the client who filed the complaint against the respondent promptly retained him for three additional matters, and referred others to the respondent for representation.

For the reasons indicated, the respondent is suspended from the practice of law for a period of three months.

*Respondent suspended.*