# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *In re Mulroe*, 2011 IL 111378

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARK GERARD MULROE, Attorney-Respondent. |
| | |
| Docket No. | 111378 |
| Filed | September 22, 2011 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where an attorney allowed the balance in a trust account to fall below the amount held in escrow and the Hearing Board found violations of disciplinary rules in this conversion and recommended a three-month suspension, but found that he had not engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(a)(4), the supreme court rejected the Administrator's claim that these circumstances raised a presumption of dishonesty for purposes of Rule 8.4(a)(4) where the Hearing Board's finding of lack of dishonest motive as to the funds was not contrary to the manifest weight of the evidence–request to craft a bright line rule declined. |
| | |
| Decision Under Review | Disciplinary proceeding. |
| | |
| Judgment | Respondent suspended. |
| | |
| Counsel on Appeal | Steven R. Splitt, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.<br><br>Mark Gerard Mulroe, of Arlington Heights, respondent *pro se*. |

JUSTICE GARMAN delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.


**OPINION**

¶ 1    On June 20, 2007, the Administrator of the Attorney Registration and Disciplinary Commission filed a one-count complaint against respondent, Mark Gerard Mulroe. The complaint alleged that respondent converted third-party funds; failed to hold property of a third person that was in his possession in connection with a representation separate from his own property, in violation of Rule 1.15(a) of the Illinois Rules of Professional Conduct; failed to promptly deliver to the third person the funds that person was entitled to receive, in violation of Rule 1.15(b) of the Illinois Rules of Professional Conduct; engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation, in violation of Rule 8.4(a)(4) of the Illinois Rules of Professional Conduct; engaged in conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(a)(5) of the Illinois Rules of Professional Conduct; and engaged in conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute, in violation of Supreme Court Rule 770.[1]

¶ 2    The Hearing Board found that respondent had converted funds and violated Rules 1.15(a), 1.15(b), and 8.4(a)(5). The Board concluded, however, that the Administrator did not prove by clear and convincing evidence that respondent violated Rule 8.4(a)(4). The Board recommended that respondent be suspended from the practice of law for three months and be ordered to attend a seminar on professionalism and office management prior to the conclusion of his suspension. The Administrator timely filed exceptions to the report and recommendation of the Review Board. Ill. S. Ct. R. 753(d)(2) (eff. Sept. 1, 2006). The Review Board affirmed the Hearing Board's factual findings and findings of misconduct, but recommended a six-month suspension.

¶ 3    We allowed the Administrator's petition for leave to file exceptions. Ill. S. Ct. R. 753(e).


¶ 4                                  I. BACKGROUND

¶ 5    Respondent was admitted to practice law in Illinois in 1989. He began his own legal practice doing transactional work in 1992. Respondent bought into a friend's business, which helps recovering addicts, and other ventures. Helping these businesses became a significant function of his law practice. At the time of the hearing, respondent estimated that he spent

---

[1]We note that Rule 8.4 of the Illinois Rules of Professional Conduct was amended, effective January 1, 2010, and no longer follows the same structure. We have applied the previous version of the rule to respondent's case.

less than 20% of his time on his law practice.

¶ 6    Even though he did not usually handle client funds, respondent asked his paralegal, Denise Wagner, to open an IOLTA client trust account on his behalf for his law practice based on the Commission registration form he was sent one year. This account was in addition to the practice's operating account. Respondent used the IOLTA account as a "pass through" account to park money that he used for business purposes. He delegated financial responsibilities including billing and the payment of the law practice's expenses to Wagner, who testified that "[m]ost of the money that *** came in went directly to the IOLTA account." However, no checks had been ordered for the IOLTA account, so the money was routinely moved into the operating account before being used to make payments. Eventually, Roy Gibson, respondent's banker, began to transfer money between accounts to pay expenses without consulting respondent. Respondent admitted that he did not regularly balance his accounts, but left much of that responsibility to Gibson and Wagner.

¶ 7    In 2002, Julie Fishman filed a petition for dissolution of marriage against her husband, Adam Fishman. Adam was a friend of respondent. In July 2003, the Fishman marital home was sold and the proceeds, $141,506.14, were held in an escrow account by Julie's attorney, Jonathan Sherwell. Respondent agreed to represent Adam and, when Julie discharged Sherwell in October 2005, respondent agreed to take possession of the Fishman funds until the allocation was determined by the court. On November 3, 2005, Sherwell transferred $113,397.65 to respondent's IOLTA account, which represented the total amount of the funds after all court-approved disbursements had been made. In December 2005, the dissolution was finalized and the trial court awarded Julie $127,783 to be paid from the escrow. Both Julie and Adam filed motions to reconsider after the judgment was entered. Respondent agreed to represent Adam free of charge in the postdissolution matters. At that point, Julie was representing herself.

¶ 8    Between November 3, 2005, and February 28, 2006, respondent made transfers from the IOLTA account to his business account to make payments for his personal and business expenses. As of February 28, 2006, the IOLTA account had been drawn down to $174.81. Respondent never received authorization from the court or from Julie or Adam Fishman to use the funds to pay his business and personal expenses.

¶ 9    On August 16, 2006, the trial court entered an order directing respondent to release the funds to Julie. Both Julie and Adam told respondent that they intended to appeal the order. Adam asked respondent to represent him on appeal. Respondent declined, but filed a notice of appeal on Adam's behalf. Respondent subsequently received letters from Julie, dated September 15 and September 26, 2006, demanding that he transfer the funds to her and make a full accounting. Before the Hearing Board, respondent testified that he had a conversation with Julie shortly after he received the September 26 letter in which he told her the amounts she referenced in her letter were not accurate. Julie told him she was planning to appeal the order. Respondent did not transfer the funds or provide an accounting, but he testified that if he had written a check on his operating account at that time, it would have cleared and that his net worth at the time was approximately $2 million to $3 million.

¶ 10    On November 3, 2006, the trial court heard Julie's "Verified Petition for Rule to Show

Cause Why Respondent Should not be Held in Indirect Contempt of Court (Disbursement of Escrow)." The court directed respondent to transfer the Fishman funds to Julie by November 13, 2006, to avoid being held in contempt. On November 3, 2006, respondent did not hold the Fishman funds in his IOLTA account. Between November 3 and November 8, 2006, he made three deposits to his business account, totaling $151,000. On November 6, respondent drafted a check on his business account to Julie for $115,606.49, the amount of the Fishman funds plus interest. The check was dated November 8, 2006. He testified before the Hearing Board that he postdated the check so that there would be time to verify the correct amount owed. On November 7, 2006, respondent wire transferred the escrow funds into Julie's account. He testified that Julie never returned his check. On November 8, 2006, Julie sent a complaint to the ARDC regarding respondent's conduct.

¶ 11      Before the Hearing Board, respondent presented several character witnesses, who attested to respondent's engagement in the community, his *pro bono* work, and his excellent reputation for honesty and integrity. Brian Rowland testified that, at all relevant times, respondent had access to $115,000 from their business enterprises and that respondent could have accessed this money without Rowland's permission. Respondent also testified on his own behalf, stating that he never intended to deprive Julie of her money, admitting wrongdoing, and expressing remorse. Respondent has had no prior discipline.

¶ 12      The Hearing Board found that respondent converted Julie Fishman's funds in the amount of $115,606.49. The Board further found that he failed to hold the escrow funds separate from his own property, that he failed to promptly deliver the funds to Julie, and that his misconduct is prejudicial to the administration of justice and brings the legal profession into disrepute, violating Rules 1.15(a), 1.15(b), and 8.4(a)(5) of the Illinois Rules of Professional Conduct. The Board concluded, however, that the Administrator did not prove by clear and convincing evidence that respondent engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation. It found respondent's testimony to be credible and did not believe that he intended to deprive Julie of the escrow funds. Further, the Board found that respondent had the financial means to deliver the funds at all relevant times and that he honestly believed he was not to distribute the funds to Julie until the issues on appeal were resolved or dismissed. It concluded that the conversion was a technical one, not motivated by an intention to deprive Julie of her funds. The Board, therefore, recommended that the allegation that respondent violated Rule 8.4(a)(4) of the Illinois Rules of Professional Conduct (eff. July 6, 2001) be dismissed. The Hearing Board recommended that respondent be suspended from the practice of law for three months and be ordered to attend a seminar on professionalism and office management prior to the conclusion of his suspension.

¶ 13      The Review Board agreed with the Hearing Board's conclusion that respondent's actions did not violate Rule 8.4(a)(4), but recommended a six-month suspension.

¶ 14                                    II. ANALYSIS

¶ 15      The Administrator challenges the findings of the Hearing and Review Boards that respondent did not violate Rule of Professional Conduct 8.4(a)(4). The Administrator also argues to this court that the proper sanction in this case is to suspend respondent from the

practice of law for three years.

¶ 16                           A. Rule 8.4(a)(4)

¶ 17    The Administrator argues that, when respondent agreed to hold client funds and "refus[ed] to follow basic financial protocol to protect those funds," respondent engaged in dishonest conversion, such that his actions violated Rule 8.4(a)(4) of the Illinois Rules of Professional Conduct. Rule 8.4(a)(4) directs: "A lawyer shall not *** engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

¶ 18    The findings of fact made by the Hearing Board will generally not be disturbed unless they are against the manifest weight of the evidence. *In re Cutright*, 233 Ill. 2d 474, 488 (2009). "A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.* This deferential standard of review recognizes that the Hearing Board is in a better position to observe the demeanor of witnesses, judge credibility, and resolve conflicting testimony. *Id.*

¶ 19    The Hearing Board concluded that the Administrator did not prove by clear and convincing evidence that respondent engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation. It credited respondent's testimony and found that he did not intend to deprive Julie of the escrow funds. The Board found that respondent had the financial means to deliver the funds at all relevant times and that he had an honest belief that he was not to distribute the funds until the issues on appeal were resolved or dismissed. The Administrator argues before this court that the undisputed facts in this case establish that respondent acted recklessly with respect to the protection of the funds, in violation of his fiduciary duty to hold and protect the funds, and that this recklessness is sufficient to satisfy the scienter requirement of Rule 8.4(a)(4).

¶ 20    We agree with the Administrator that the responsibility of holding client funds is a serious fiduciary duty and should not be treated lightly. We have, on more than one occasion, emphasized the importance of this responsibility, deeming "explanations [for conversion] such as 'poor bookkeeping,' 'failure to fully understand the duty' and 'no dishonest motive' completely unacceptable." *In re Timpone*, 157 Ill. 2d 178, 194-95 (1993) (quoting *In re Grant*, 89 Ill. 2d 247, 253 (1982)). However, the question at hand is not whether respondent committed conversion, but whether the conversion constituted "conduct involving dishonesty, fraud, deceit, or misrepresentation" such that respondent violated Rule 8.4(a)(4).

¶ 21    In *In re Cutright*, 233 Ill. 2d 474, 488 (2009), we addressed the Administrator's argument that an attorney violates Rule 8.4(a)(4) when he recklessly disregards a legal obligation. In that case, the Hearing Board found that Cutright gave the judge before whom he was appearing free legal services by reviewing his tax forms, violating several rules of professional conduct. *Id.* at 482. It also found that when Cutright failed to inform opposing counsel of these gifts, he was merely unaware of his ethical obligations and did not intend to deceive anyone. *Id.* at 482-83. The Board therefore concluded that the Administrator did not prove a violation of Rule 8.4(a)(4). *Id.* at 483. In our review, we noted that "where this court has concluded that the respondent violated Rule 8.4(a)(4), there was some act or circumstances that showed the respondent's conduct was purposeful." *Id.* at 489 (citing *In*

*re Rinella*, 175 Ill. 2d 504 (1997) (respondent provided testimony he knew to be false during a hearing before the Hearing Board), and *In re Winthrop*, 219 Ill. 2d 526 (2006) (respondent relayed information he knew to be false to benefit one client at the detriment of another)). We also noted that, where this court found no violation of Rule 8.4(a)(4), the court "came to that conclusion after determining there was no evidence the misconduct in that case was intentional." *Cutright*, 233 Ill. 2d at 489 (citing *In re Witt*, 145 Ill. 2d 380 (1991) (the court was not persuaded that the respondent's silence was intended to perpetrate a fraud)).

¶ 22    In the case at hand, the Hearing Board similarly found that respondent was unaware of his ethical responsibilities with respect to the proper procedures for handling client money and that he did not intend to deprive Julie of her funds. We cannot say that this conclusion was against the manifest weight of the evidence, as the Hearing Board was in a superior position to judge the credibility of witnesses and there was no evidence that responded gained any advantage through his sloppy bookkeeping practices. There is nothing in the record to indicate any deceptive or dishonest intent. As we stated in *Cutright*, "[e]ach case is unique and the circumstances surrounding the respondent's conduct must be taken into consideration." *Cutright*, 233 Ill. 2d at 490. While a pattern of recklessness with respect to handling client funds may, in some cases, indicate a dishonest intent, we cannot say that, in this case, respondent's careless bookkeeping practices were clear evidence of dishonesty.

¶ 23    The Administrator urges us to conclude, however, that failing to follow proper procedures for safeguarding client funds is inherently dishonest and that recklessness with respect to client funds creates a presumption of dishonesty. This court has previously addressed a similar argument and has found that, while facts indicating poor bookkeeping practices or a failure to fully understand the attorney's duty "do not excuse or negate the conversion of client funds, they are evidence that the conversions were not due to dishonest motive, but instead due to the careless practices respondent employed." *In re Timpone*, 157 Ill. 2d 178, 195 (1993). Because the circumstances surrounding conversion cases vary greatly, we decline to craft a bright line rule that reckless conversion creates a presumption of dishonesty in violation of Rule 8.4(a)(4) in every case. See *Cutright*, 233 Ill. 2d at 490.

¶ 24                                    B. Sanction

¶ 25    The Administrator has also challenged the recommended sanction for respondent's conduct, arguing that respondent's misconduct warrants a three-year suspension from the practice of law. Respondent urges us to adopt the Hearing Board's recommended sanctions. The Hearing Board recommended a three-month suspension and attendance of a seminar on professionalism and office management and the Review Board recommended a six-month suspension. These recommendations are merely advisory, however, and we retain the ultimate responsibility for imposing discipline on attorneys. *Cutright*, 233 Ill. 2d at 490-91. While each case must be decided on its unique facts, we "strive for consistency and predictability in the imposition of sanctions." *Id.* at 491. In determining the proper sanction, we consider evidence in mitigation and aggravation. *Id.*

¶ 26    As this court has emphasized before, ignorance of the responsibilities imposed upon attorneys by the Code of Professional Responsibility does not excuse respondent's

-6-

misconduct. *In re Cheronis*, 114 Ill. 2d 527, 535 (1986). "It is a paramount obligation of each member of the bar to study the Code of Professional Responsibility and abide by its terms and principles. This court has stated repeatedly that commingling or conversion of clients' funds will not be countenanced." *Id.* (collecting cases). However, our primary goal in imposing sanctions is not to punish the attorney, but to protect the public and maintain the integrity of the legal profession. *Cutright*, 233 Ill. 2d at 491.

¶ 27    In arriving at its recommendation, the Hearing Board compared respondent's case to the situation in *In re Cheronis*. In that case, the attorney had never had a separate escrow account for client funds, commingled client funds with his own, and did not immediately tender all of the funds to the client when they were requested, but repaid the client in installments over a period of months. *Cheronis*, 114 Ill. 2d at 536. The Hearing and Review Boards found no dishonest motive behind the conversions, and Cheronis cooperated fully with the Administrator and the Hearing Board, expressed remorse, and took corrective measures by opening a client trust account. *Id.* at 537. Other mitigating factors included the fact that Cheronis made full restitution to the client, had performed substantial *pro bono* legal work, and had a good reputation in the community. *Id.* This court found that these mitigating factors, combined with the aggravating factor of Cheronis's near-bankruptcy and the resulting risk to his clients, warranted a three-month suspension from the practice of law. *Id.* at 536-37.

¶ 28    The Hearing Board in this case noted that respondent admitted wrongdoing, expressed remorse, and cooperated throughout the proceedings. He had not been previously disciplined and he offered several character witnesses who testified to his excellent reputation for honesty. Respondent spends large amounts of time providing *pro bono* services to members of his community and he had made full restitution to Julie. The Hearing Board also considered the large sum that respondent converted and Julie's testimony regarding the financial hardship she suffered while waiting for the disbursement of the funds. Drawing close parallels with *Cheronis*, the Hearing Board recommended a three-month suspension and attendance of a seminar on professionalism and office management as an appropriate sanction for respondent's conduct.

¶ 29    The Review Board compared the facts in respondent's case to two different cases where discipline was imposed on consent, and concluded that, in line with those cases, a six-month suspension was warranted. The Board also found that probation was not a useful tool in this case, as respondent had already corrected the problems in his banking practices.

¶ 30    In *In re Young*, the respondent deposited $3,209.04 in escrow funds into an account that he used for personal business and was found to have converted those funds. *In re Young*, 111 Ill. 2d 98, 101 (1986). The clients contacted Young several times over an eight-month period concerning the money and respondent refused to return the escrow funds from their former residence until the title company waived the title exception, per the escrow agreement. *Id.* Five days after the title company waived the title exception, Young tendered a cashier's check to the clients for the full sum of the amount held in escrow, including interest and attorney fees. *Id.* at 102. The Hearing Board in that case concluded that Young did not have a dishonest motive, there was a *bona fide* title problem which justified his retention of the clients' money, and that Young had sufficient assets to repay the money to the clients. *Id.* at

-7-

104-05. Young was cooperative with the Hearing Board and repentant for the conversion, had no prior discipline, had a good reputation in the community, and engaged in community activities and *pro bono* work. *Id.* at 105. Further, Young no longer actively maintained a legal practice, only conducting a small amount of legal work in connection with his other business dealings. *Id.* Given these considerations, this court found that censure was the appropriate sanction. *Id.*

¶ 31 We find that the current case closely parallels *Young* and *Cheronis*. Though respondent maintained an IOLTA account, he used the account as he would any other business account, commingling client funds with his operating funds and resulting in conversion. This practice violated respondent's professional duty to maintain client funds in a separate account and put client funds at risk. These practices will not be countenanced. However, as in *Young* and *Cheronis*, the Hearing Board in this case found that there was no dishonest intent behind the conversion and we have concluded that this finding was not against the manifest weight of the evidence. Respondent made full restitution to Julie, admitted wrongdoing, expressed remorse, and otherwise cooperated fully with the Hearing Board. The Board also accepted respondent's testimony that the delay in delivering Julie's funds to her resulted from respondent's genuine belief that the funds were not due until after all appeals had been resolved. Respondent performs substantial *pro bono* work, participates in other charitable activities, and has never before been disciplined in more than 20 years of legal practice. Multiple witnesses testified to respondent's excellent reputation for honesty and trustworthiness. In aggravation, we note that respondent converted a large sum, more than $100,000, and his lack of care with respect to his banking practices put the money at risk. Though Julie testified to financial hardship she suffered due to the delay in receiving her funds, we note that this hardship was not caused by respondent's conversion, but by his misunderstanding that the funds were not to be disbursed until appellate proceedings were completed. We therefore do not consider this an aggravating factor.

¶ 32 For the foregoing reasons, we conclude that the Hearing Board recommended an appropriate discipline. Accordingly, respondent is suspended from the practice of law for three months and ordered to attend a seminar on professionalism and office management prior to the conclusion of his suspension.

¶ 33 Respondent suspended.