# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *In re Thomas*, 2012 IL 113035

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* ROBERT C. THOMAS, Attorney-Respondent. |
| Docket No. | 113035 |
| Filed | January 20, 2012 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A one-year suspension was ordered for an attorney whose earlier driving under the influence and on a revoked license had resulted in a prior suspension during which he continued to practice law without authorization under circumstances indicating dishonesty and misrepresentation because he concealed and ignored his suspension, and, later, denied all wrongdoing. |
| Decision Under Review | Disciplinary proceeding. |
| Judgment | Respondent suspended. |
| Counsel on Appeal | Susan Frederick Rhodes and Rosalyn B. Kaplan, both of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission<br><br>Robert C. Thomas, of Hinsdale, respondent *pro se*. |

Justices             JUSTICE GARMAN delivered the judgment of the court, with opinion.
                     Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke,
                     and Theis concurred in the judgment and opinion.


                                         **OPINION**

¶ 1        The Administrator of the Attorney Registration and Disciplinary Commission
           (Commission) filed a three-count complaint against respondent, Robert C. Thomas, charging
           him with misrepresentation to a tribunal and two counts of unauthorized practice of law. The
           Hearing Board found that the Administrator had proven misconduct and recommended
           respondent be suspended from the practice of law for two years. Respondent timely filed
           exceptions with the Review Board, which recommended dismissal of the charges. The
           Administrator filed a petition for leave to file exceptions with this court, pursuant to Supreme
           Court Rule 753(e)(1) (Ill. S. Ct. R. 753(e)(1) (eff. Dec. 1, 1995)), which we allowed.


¶ 2                                     BACKGROUND
¶ 3        Respondent was admitted to practice in Illinois in 1969. He left the practice of law for
           a time, serving as president and chief executive officer of a steel company. He returned to
           the practice of law in 1998.

¶ 4        In 2004, the Administrator filed a six-count complaint alleging that respondent had been
           convicted of two charges of misdemeanor driving under the influence of alcohol, one charge
           of misdemeanor driving while his license was revoked, and three felony charges of driving
           while his license was revoked. In each instance the Administrator also alleged that
           respondent failed to report his conviction to the Commission in violation of Supreme Court
           Rule 761(a) (Ill. S. Ct. R. 761(a) (eff. July 1, 1984)). In addition, the Administrator charged
           that respondent neglected a client's declaratory judgment action. The Hearing Board found
           that the Administrator had proven the misconduct alleged in five of the six counts. As to the
           sixth count, neglect of a client matter, the Hearing Board found that some of the allegations
           had been proven. The Review Board affirmed. On September 26, 2005, this court issued an
           order suspending respondent from the practice of law for a period of 18 months, effective
           October 17, 2005, and ordering him to reimburse the Disciplinary Fund for any client
           protection payments arising from his conduct.

¶ 5        On October 17, 2007, the Administrator filed the present three-count complaint. Count
           I alleged misrepresentation to a tribunal, specifically the United States Bankruptcy Court for
           the Northern District of Illinois. Count II alleged that respondent engaged in the unauthorized
           practice of law before the United States Court of Appeals for the Seventh Circuit during his
           suspension. Count III alleged that he engaged in the unauthorized practice of law in the
           circuit court of Du Page County after the effective date of his suspension.

¶ 6                                              Count I

¶ 7          Count I involves a matter that occurred prior to respondent's suspension. In 1998,
Thomas Consolidated Industries (TCI), a corporation of which respondent was president and
sole shareholder, purchased a tool and die shop from Juergen and Trudy Herbst, who
continued to own the property where the business was located. Later, the Herbsts filed a
forcible entry and detainer action against TCI. In 1999, TCI filed for bankruptcy. Respondent
at times represented the bankruptcy trustee and, in 2001, he filed an adversary proceeding
on behalf of the trustee against the Herbsts and others, alleging breach of contract, fraud in
the inducement, and other claims.

¶ 8          Discovery was a long, drawn-out process. According to the Herbst defendants,
respondent refused to comply with requests for production of documents and to answer their
interrogatories. In January 2004, the Herbsts filed a motion to compel, alleging that
respondent had failed to adequately respond to their discovery requests. On March 8, 2004,
the bankruptcy court ordered respondent to comply by April 30, 2004. On May 10, 2004, the
Herbsts filed a motion for sanctions, alleging, in part, that respondent had not complied with
the court's March 8 order. A hearing on the motion was set for May 13, 2004.

¶ 9          On May 12, 2004, however, the Herbsts' attorney received an overnight delivery package
from United Parcel Service (UPS) containing the outstanding discovery responses. Attached
to the discovery documents was a signed certificate of service, in which respondent stated
that the materials had been sent "by U.S. mail postage prepaid" on "May 7, 2004." At the
May 13 hearing, the Herbsts' attorney stated that the materials received the previous day
were "inadequate, incomplete, and non-responsive" to the discovery requests. In addition,
she stated that she checked the package's tracking number on the UPS website, which
indicated that UPS had received the package on May 11, 2004, for overnight delivery and
delivered it to her on May 12, 2004. That is, respondent not only sent the discovery materials
after the April 30 deadline, he appeared to have sent them after the Herbsts' attorney filed
the motion for sanctions. On May 27, 2004, the Herbsts filed an amended motion stating that
the documents received on May 12 were certified by respondent to have been mailed on May
7. The amended motion also incorporated the UPS tracking information.

¶ 10         After another hearing on August 5, 2004, the bankruptcy court ruled on the Herbsts'
motion for sanctions. At that hearing, respondent stated "for the record," that he delivered
the materials on May 7 "to the UPS store for copying and mailing. They mailed the material
from the UPS store." Referring to the certificate of service, he stated that "[t]here was
nothing false, or inadvertent, or misleading in the statement." At the conclusion of the
hearing, the court granted the motion for sanctions, dismissing the case with prejudice based,
in part, on respondent's failure to comply with the March 8, 2004, discovery order. In doing
so, the court stated "[w]hat appears from the record is that you sent off your responses to
discovery via UPS on May 11th and lied about when you did it. Now lie is a strong word and
I use it here advisedly. At the very least, you asserted contradictory positions."

¶ 11         Respondent filed a notice of appeal with the United States district court, which affirmed
the dismissal of the complaint with prejudice as a sanction for violation of the discovery
order. In this appeal, respondent, as counsel for the bankruptcy trustee, "did not challenge

the finding[s] that [he] lied to the court, and that [he] served the discovery responses only after receiving the motions for sanctions." *In re Thomas Consolidated Industries, Inc.*, 456 F.3d 719, 724 (7th Cir. 2006).

¶ 12 In the subsequent appeal to the Seventh Circuit, the court rejected respondent's argument that the date on which he tendered the discovery materials was "irrelevant" to the issue of the propriety of dismissal as a sanction. The court stated that respondent's lie about when and how he served the discovery responses "went to the heart of the [bankruptcy] court's order." *Thomas Consolidated Industries*, 456 F.3d at 726. Further:

"Although he conceded that the responses were late in coming, he did not concede what was obvious to this court and to the courts below, that [he] failed to tender any responses until after the motion for sanctions was filed on May 10. His lie was calculated to make the court believe that he substantially complied with the court's order without the threat of the sanctions motion. Perhaps he hoped to persuade the court to enter a less severe sanction; perhaps he hoped to avoid sanctions entirely. But the lie was so obviously related to the failure to comply with the order that the connection did not merit express mention below. Because this is the focus of [TCI's] argument, we make express what the courts below implied: the lie about when and where the responses were tendered was evidence of a bad faith breach of the court's discovery order. Moreover, the courts below did not rely solely on Thomas' lies for a showing of bad faith, but relied in part on the fact that he repeated the same non-responsive, inadequate answers that the bankruptcy court expressly warned him were unacceptable. This blatant disregard of the bankruptcy court's order was more than sufficient to demonstrate the bad faith finding that justified dismissal." *Id.*

¶ 13 In the complaint, the Administrator charged that respondent's statements in the certificate of service and in the hearing before the bankruptcy court were false and that respondent knew or should have known that they were false, because he did not deposit the discovery responses in the "U.S. mail" on May 7, 2004; rather, he placed the materials with UPS for delivery on May 11, 2004. This conduct, the Administrator charged, constituted a violation of Rule 3.3(a)(1) of the Illinois Rules of Professional Conduct (Ill. Rs. Prof'l Conduct R. 3.3(a)(1) (eff. Aug. 1, 1990) (making a "false statement of material fact or law to a tribunal")). In addition, the Administrator charged that this conduct violated Rule 8.4(a)(4) (Ill. Rs. Prof'l Conduct R. 8.4(a)(4) (eff. July 1, 1990) (conduct involving dishonesty, fraud, deceit, or misrepresentation)), and Rule 8.4(a)(5) (Ill. Rs. Prof'l Conduct R. 8.4(a)(5) (eff. July 1, 1990) (conduct prejudicial to the administration of justice)).[1] Thus, the Administrator argued, respondent was subject to discipline under Supreme Court Rule 770 (Ill. S. Ct. R. 770 (eff. Apr. 1, 2004) (conduct that tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute)).

---

[1] The Illinois Rules of Professional Conduct, adopted February 8, 1990, and effective August 1, 1990, which were in effect at the time of the conduct at issue, have been repealed and replaced by the Illinois Rules of Professional Conduct of 2010, effective January 1, 2010.

¶ 14                                    Count II

¶ 15        On August 13, 2004, after the bankruptcy court dismissed TCI's lawsuit against the Herbsts and others, the bankruptcy trustee filed a notice of appeal with the United States District Court for the Northern District of Illinois. The notice of appeal listed Louis Levit as the attorney for the trustee and respondent as the former attorney. As noted above, the district court affirmed the dismissal on May 11, 2005. The trustee in bankruptcy subsequently decided to abandon the adversary claim. TCI, the underlying debtor, took over the action, replacing the bankruptcy trustee as appellant. On June 9, 2005, respondent filed a timely notice of appeal with the United States Court of Appeals for the Seventh Circuit. He did not, however, file an appearance as TCI's attorney.

¶ 16        On November 28, 2005, he filed a "Motion for Extension of Time" in the pending appeal. In that motion, he stated that he had been "working on the brief" and would "continue to do so." He also stated that he was "in discussion" with counsel to represent TCI but that if counsel could not be retained, he would complete the brief within the time requested. He asked for an extension until December 28, 2005. He signed the motion as TCI's president and shareholder, not as its attorney. On December 29, 2005, respondent filed a second "Motion for Extension of Time," in which he attributed the delay to difficulty in obtaining the record from opposing counsel. He again stated that he had been "diligently working on the brief." Again, he signed the motion as TCI's president and sole shareholder.

¶ 17        On January 3, 2006, the Seventh Circuit entered an order stating that TCI, a corporation, could proceed only through counsel and that because respondent was suspended, he could not represent the corporation. In its order, the Seventh Circuit cited *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985) (stating that "corporations must appear by counsel or not at all"). Respondent thereafter retained counsel to finish the appeal.

¶ 18        In the complaint, the Administrator charged that at the time respondent prepared and filed the two motions in the appeal before the Seventh Circuit, he was suspended from the practice of law in Illinois and in the Northern District of Illinois. Because respondent was not capable of serving as counsel to the corporation of which he was president and sole shareholder, the complaint alleged a violation of Rule 5.5(a) of the Illinois Rules of Professional Conduct (practicing in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction). In addition, the Administrator charged violations of Rules 8.4(a)(4) and (a)(5) and Supreme Court Rule 770.


¶ 19                                    Count III

¶ 20        Prior to his suspension, respondent represented Mervyn and Mercedes Phillips, the defendants in a citation proceeding brought by CIB Bank in the circuit court of Du Page County. He did not notify his clients, the circuit court, or opposing counsel of his pending suspension.

¶ 21        Three days before his suspension was to take effect, respondent filed a "petition for hearing/rehearing," which this court construed as a motion for reconsideration. This court ordered the Administrator to respond to the motion.

¶ 22        On October 19, 2005, two days after his suspension went into effect, respondent appeared

in the CIB Bank matter at a citation hearing in the Lake County circuit court on behalf of a citation respondent, Hillmoor Golf Club. The judge called respondent to the bench and advised him that he was aware of the suspension order with an effective date of October 17. Respondent advised the court that the order was stayed.

¶ 23 Senior counsel for the Administrator sent a letter by regular and certified mail to respondent on October 20, 2005, informing him that under Supreme Court Rule 771(b), his suspension had become effective on October 17 and that his "filing of a petition for rehearing in this matter *does not* automatically stay or recall the court's mandate." (Emphasis in original.) A copy of Supreme Court Rule 764, which lists the duties of disciplined attorneys, was enclosed. In addition, the letter advised that the Commission had received information from various sources that respondent continued to file pleadings and appear in court on behalf of clients after the date of his suspension and that, if true, this conduct "may violate various provisions of the Rules of Professional Conduct."

¶ 24 Respondent replied to this correspondence from the Administrator by letter, stating that he filed his petition for rehearing pursuant to Supreme Court Rule 367 (Ill. S. Ct. R. 367 (eff. Sept. 1, 2006)), and that as a result, the order of suspension "is stayed until the Supreme Court rules upon the petition." He characterized the October 20 letter as "threatening," and stated that counsel for the Administrator had "an unnatural desire to punish and harass him." He accused John Ropiequet, an attorney for the plaintiffs in the CIB case, of threatening his clients and "undertaking to usurp the authority of the Supreme Court." He further suggested that the Commission investigate Ropiequet and asked that the Commission "[p]lease keep me informed."

¶ 25 On October 26, 2005, respondent conducted the deposition of Ropiequet and appeared with the Phillipses as their attorney as they were deposed.

¶ 26 On that same date, counsel for the Administrator informed respondent by letter that Supreme Court Rule 367 did not apply to his suspension and directed him to Rule 771(b), which provides that a petition for rehearing from a disciplinary order does not stay or recall the court's mandate. Ill. S. Ct. R. 771(b) (eff. Apr. 1, 2004). The letter further recommended that respondent contact the clerk of the Supreme Court to resolve any doubt he might have regarding his status. The telephone number for the clerk's office was provided. Finally, the letter informed respondent that:

> "If you continue to hold yourself out as an attorney and continue to engage in the practice of law, your conduct may be deemed the unauthorized practice of law, and therefore exposing [*sic*] you to criminal sanctions, contempt of court and/or additional disciplinary proceedings. In addition, your conduct may cause prejudice to your clients in that any rulings made during a period of suspension may be deemed void by the courts."

¶ 27 This court denied respondent's motion for reconsideration on October 28, 2005.

¶ 28 An investigation was opened after the Commission received a report from attorney Ropiequet. After looking into the matter, the Administrator advised Ropiequet that "upon our communications with him, Mr. Thomas withdrew from the case at issue and has ceased any representation in that matter. As a result, we have determined that a formal disciplinary

prosecution of Mr. Thomas is unnecessary."

¶ 29    On August 30, 2006, respondent was also advised by a letter from counsel for the Administrator that the matter had been closed. The letter specifically referred to Commission Rule 54, which provides that the Administrator shall close an investigation when he concludes "that there is insufficient evidence to establish that the respondent has engaged in misconduct" and that such closure "shall not bar the Administrator from resuming the investigation if circumstances warrant." Attorney Registration and Disciplinary Comm'n R. 54. On July 18, 2007, counsel for the Administrator informed respondent that the matter was being reopened in light of his continuing to practice law in the matter before the Seventh Circuit.

¶ 30    In count III, the Administrator charged that respondent's participation in the October 26, 2005, depositions as attorney for the Phillipses violated Rules of Professional Conduct 5.5(a), 8.4(a)(4), and 8.4(a)(5) and Supreme Court Rule 770.

¶ 31                                    Hearing Board
¶ 32                                    *Count I*
¶ 33    Before the Hearing Board, respondent testified that he took the discovery documents to the UPS store in Willowbrook, Illinois, on May 7, 2004, for copying and mailing. He did not instruct the UPS store that he wanted the documents to be copied and sent by United States Postal Service that day. He assumed that the work would be done that day and did not ask when or how the materials would be sent. UPS did not give him a date. He further testified that after copying the documents, the UPS store sent them to another UPS facility in Addison, Illinois, for delivery. He had never been to the Addison facility. He also admitted that his answers to the discovery requests were due on April 30, 2004, and that he did not comply with the discovery order. He explained that his strategy was to provoke the bankruptcy court into imposing a discovery sanction so that he could appeal and obtain a remand to a different judge.

¶ 34    The Hearing Board accepted as true respondent's statement that he took the discovery materials to the UPS store on May 7, 2004. The tracking information obtained from the UPS website might be explained by his delivery of the materials to the Willowbrook store on May 7 and later delivery by UPS itself to the Addison facility on May 11. In the absence of evidence explaining UPS procedures, the Hearing Board found that the Administrator failed to prove that respondent lied about the date on which he delivered the documents to UPS.

¶ 35    Nevertheless, the Hearing Board concluded, he engaged in misconduct by certifying that he sent the documents on May 7 by United States Postal Service. The certificate was "wrong and misleading" because the documents were not sent on May 7 and they were not sent via "U.S. mail." Respondent had no basis for making these assertions; he did not have a reasonable expectation that the documents would be sent on this date or in this manner, and he did not inquire about when and how they would be sent. Thus, "[b]y completing and delivering the inaccurate certificate of mailing," he engaged in misconduct. If he did not lie, he "completed the certificate of mailing with indifference to the truth."

¶ 36                                            *Count II*

¶ 37        Before the Hearing Board, respondent testified that he filed an appearance in the appeal before the district court, but did not file an appearance in the appeal before the Seventh Circuit. When he filed the motions, he knew his law license had been suspended, but believed he could represent his interests in the corporation *pro se*, as its president and sole shareholder. He stated that he had reviewed the Federal Rules of Civil Procedure and the rules of the Seventh Circuit and found no federal or local rule prohibiting him from appearing on behalf of the corporation *pro se*. He was not aware of the *Scandia Down* case or other case law standing for that proposition.

¶ 38        The Hearing Board found the facts sufficient to prove that respondent practiced law while his license was suspended. He prepared and filed two motions and represented to the court that he was working on the appellate brief. Although he stated that he believed that he could represent the corporation *pro se*, he admitted in a sworn statement that he did not research the question beyond looking at the federal rules and that the law is clear that a corporation must be represented by a licensed attorney. The Hearing Board also rejected respondent's defense that he lacked intent to violate the order of suspension.


¶ 39                                            *Count III*

¶ 40        Attorney John Ropiequet testified before the Hearing Board that he represented CIB Bank in the case in which respondent represented the Phillipses. He stated that he was aware of the pending disciplinary proceedings against respondent and that he was concerned about concluding discovery by the November 1, 2005, deadline set by the circuit court. He followed the progress of the disciplinary proceedings and on October 18, 2005, he wrote to the Phillipses to inform them that respondent had been suspended from the practice of law and that they were no longer represented in the lawsuit. He also advised them that, as a result, the depositions could not take place as scheduled. With the November 1 discovery deadline looming, the depositions would have to be rescheduled as soon as possible.

¶ 41        Ropiequet also testified that he received a telephone call from respondent on October 20, 2005. Respondent informed him that his clients would appear for their scheduled depositions and that he would be taking Ropiequet's deposition. He informed Ropiequet that he had filed a petition for rehearing with the Illinois Supreme Court. Finally, he threatened that if Ropiequet ever contacted his clients again, he would "punch your teeth down your throat, you little bastard." Thereafter, Ropiequet contacted the office of the clerk of the Supreme Court regarding respondent's status. He was informed that respondent had filed a petition for rehearing, but that he remained suspended from the practice of law.

¶ 42        He further testified that on November 9, 2005, he filed a motion for a rule to show cause based on respondent's suspension. In that motion, Ropiequet argued that respondent's unauthorized practice of law showed contempt of court. The motion was accompanied by an affidavit by Ropiequet regarding the telephone conversation and transcripts of the depositions in which respondent participated. At the hearing on the motion, respondent told that court that he had filed a petition for rehearing and believed that his suspension was stayed, pending a ruling on the petition. At that same hearing, a motion was filed to substitute

-8-

another lawyer as counsel for the Phillipses. The circuit court denied the petition for a rule to show cause.

¶ 43    Ropiequet subsequently filed a request for a Commission investigation of respondent's continuing to hold himself out as an attorney after the effective date of his suspension. He was informed by counsel for the Administrator that because respondent withdrew from representing the Phillipses, no formal disciplinary proceeding was necessary.

¶ 44    Respondent told the Hearing Board that he filed a petition for rehearing in the disciplinary matter. Because this court ordered the Administrator to file a response to the petition for rehearing, he believed that rehearing was under consideration and that, as a result, his order of suspension was stayed pending this court's ruling on the petition. He stopped representing the Phillipses when this court denied his petition for rehearing on October 28, 2005.

¶ 45    The Hearing Board found that respondent engaged in the unauthorized practice of law when he conducted one deposition and appeared on behalf of clients at two other depositions while his license was suspended. The Hearing Board stated that "there can be no question, and Respondent does not dispute" that he practiced law in Du Page County after the suspension took effect. His belief that the suspension was stayed pending a decision on his petition for rehearing was contrary to the plain language of the applicable rule, Supreme Court Rule 771(a), which states in pertinent part that: "No petition for rehearing pursuant to Rule 367 may be filed in such a case, nor will any motion or other paper submitted after an order is filed automatically stay or recall the court's mandate." Ill. S. Ct. R. 771(a) (eff. Apr. 1, 2004). Thus, the Hearing Board concluded, respondent "had no reasonable basis to believe that the petition for rehearing would have any effect on the suspension order."

¶ 46    In sum, the Hearing Board found all three counts proven and recommended that respondent be suspended from the practice of law for two years.

¶ 47                                            Review Board

¶ 48    Before the Review Board, respondent did not challenge the Hearing Board's findings of fact, but he denied any misconduct. The Review Board, therefore, proceeded with *de novo* review.

¶ 49    As to count I, the Review Board unanimously concluded that respondent's misstatements in the certificate of service "made no difference to the proceedings before the bankruptcy court" and that they "were not material misrepresentations." Thus, there was insufficient evidence of a violation of Rule 3.3(a)(1). In addition, respondent's mere indifference as to the truth of the information in the certificate of service did not constitute dishonesty, fraud, deceit, or misrepresentation under Rule 8.4(a)(4). There was also insufficient evidence that respondent violated Rule 8.4(a)(5) or Supreme Court Rule 770.

¶ 50    As to count II, the Review Board unanimously concluded that reversal of the Hearing Board was required because the Administrator failed to present evidence that respondent's filings in the Seventh Circuit violated the regulations of that licensing jurisdiction.

¶ 51    As to count III, respondent argued that under Commission Rule 54, a closed investigation

may be reopened only if the Administrator obtains additional evidence regarding the original charges. The majority agreed, concluding that "[i]f the evidence was initially insufficient to establish misconduct, the fact that there is evidence of misconduct relating to another matter does not strengthen the evidence in the first." A majority of the Review Board agreed with respondent that the Administrator improperly reopened an investigation that had been closed in August 2006. Thus, the Review Board did not address the merits of the Hearing Board's finding of misconduct.

¶ 52    One member of the Review Board dissented as to count III, finding that the circumstances warranted reopening of the earlier investigation because the Administrator received information showing that respondent's unauthorized practice "was not the isolated incident that he had first believed." The dissenting member would have found misconduct that violated Rules 5.5(a) and 8.4(a)(5) and Supreme Court Rule 770.

¶ 53    A majority of the Review Board concluded that the unchallenged facts did not demonstrate misconduct and recommended that all charges be dismissed. The dissenting member would have found misconduct under count III of the complaint and recommended suspension for one year.

¶ 54                                    ANALYSIS

¶ 55    The Administrator raises three issues before this court and argues, in addition, that the appropriate sanction for the totality of respondent's misconduct is suspension for three years. With regard to count I, the Administrator argues that respondent's misrepresentations in the certificate of service were material and that the Hearing Board's findings were, therefore, correct. As to count II, the Administrator argues that despite his claim to the contrary, respondent did engage in the unauthorized practice of law before the Seventh Circuit. As to count III, the Administrator argues that the investigation into allegations of respondent's unauthorized practice in state court was authorized by Commission Rule 54.

¶ 56    In a disciplinary proceeding, the Administrator has the burden of proving the allegations of the complaint by clear and convincing evidence. *In re Winthrop*, 219 Ill. 2d 526, 542 (2006). The Hearing Board's findings of fact are reviewed by this court under a manifest weight of the evidence standard, under which a factual finding will be disturbed only if the opposite conclusion is clearly evident. *Id.* We afford such deference to the Hearing Board because it is in the best position to observe the witnesses, to assess their demeanor and credibility, to resolve conflicting testimony, and to render fact-finding judgments. *Id.* at 543. We review questions of law, including interpretation of rules, *de novo*. *In re Storment*, 203 Ill. 2d 378, 390 (2002).

¶ 57                                    Count I

¶ 58    The Hearing Board accepted respondent at his word that he delivered the discovery materials to UPS on May 7. Although the bankruptcy court reached the opposite result, concluding that respondent lied about the date, we cannot say that its conclusion is clearly evident. In addition, although the UPS tracking information obtained by opposing counsel calls the truth of this statement into question, the Administrator did not produce evidence

from which one could reasonably conclude that the materials were not taken to the UPS store in Willowbrook on May 7. We, therefore, accept as fact that respondent took the materials to the UPS store on May 7.

¶ 59    The other relevant facts are undisputed. Respondent signed a certificate of service stating that he had deposited the discovery documents with the United States Postal Service on May 7, 2004. He did not, however, mail the documents on that date. Rather, he took them to a UPS store for photocopying. In addition, the documents were not deposited with the United States Postal Service by respondent or by UPS. They were delivered to opposing counsel via overnight delivery by UPS on May 12, 2004.

¶ 60    Thus, the certificate of service signed by respondent contained two factual errors–the manner of transmission (United States Postal Service versus UPS) and the date of mailing or shipping (May 7 versus May 11). Although, given the record before the Hearing Board, we cannot conclude that respondent deliberately lied about the date and manner of his compliance with the discovery order, it is clear that he made false statements in the certificate of service. It was his professional responsibility, as the lawyer signing the certificate, to ensure that the statements made therein were true. Respondent had no basis for believing that documents he dropped off at a UPS store for photocopying would be copied and sent that same day. He did not instruct the UPS store that the materials were to be copied and sent that day. He did not even ask UPS personnel how long the copying and preparation would take or when the package would be ready for delivery. He neither asked how the package would be handled nor instructed the UPS store to send the package via United States Postal Service. Had he made these basic and reasonable inquiries, he would have signed a certificate stating that the discovery materials were deposited with UPS for copying and delivery on May 7, 2004.

¶ 61    The Administrator charged and the Hearing Board concluded that respondent violated Rule 3.3(a)(1) because these statements were statements of material fact that the lawyer knew or reasonably should have known were false and that he made them while appearing in a professional capacity before a tribunal. The Review Board found the statements, even if false, to be immaterial.

¶ 62    Before this court, the Administrator argues that the false statements were material, given the context in which they were made. Respondent had failed to comply with the bankruptcy court's discovery order and was facing possible sanctions. The bankruptcy court concluded that these statements were not merely false, they were deliberate lies intended to conceal the fact that his compliance was not only late, but that he did not comply with the order until after opposing counsel filed a motion for sanctions. Thus, the Administrator argues, respondent's misrepresentations were material to the bankruptcy court, the federal district court, and the Seventh Circuit, noting the sanction of dismissal with prejudice, which was upheld on review.

¶ 63    Respondent argues that the Commission failed to plead and prove materiality. He points to paragraph 10 of the complaint, which alleged that respondent's statements "were false and Respondent knew or should have known they were false," and paragraph 12(a), which charges respondent with "making a statement of material fact that the lawyer should have

known was false while appearing in a professional capacity before a tribunal" in violation of Rule 3.3(a)(1). These allegations, he asserts, are insufficient as a matter of law.

¶ 64    We have not had occasion to define the term "material" in the context of Rule 3.3(a)(1) and we are not inclined to do so in this case, not because respondent is blameless, but because the remaining counts are a sufficient basis for imposing discipline in this case and because a violation of Rule 3.3(a)(1) in this manner would not affect our decision as to the proper form of discipline.

¶ 65    That said, respondent knew or should have known that the documents would not be sent to opposing counsel on May 7, 2004, and he knew or should have known that they would not be sent via United States Postal Service. We reiterate: it was his professional responsibility to determine that the facts contained in the certificate he was signing were accurate. This same failure to inquire and utter lack of care as to the truthfulness of his statements are displayed again in the other counts.

¶ 66                                    Count II

¶ 67    The Commission argues that respondent's filing of motions on November 28 and December 29, 2005, and his work on preparing an appellate brief for filing in the Seventh Circuit after the date of his suspension constituted the unauthorized practice of law in violation of Rule 5.5(a).

¶ 68    The order of suspension took effect on October 17, 2005, and this court denied respondent's petition for rehearing on October 28, 2005. It is, therefore, absolutely certain that respondent knew he was suspended from the practice of law when he filed the motions and informed the Seventh Circuit that he was preparing the brief. It is also clear that the filing of motions and the preparation of an appellate brief constitutes the practice of law. See *In re Howard*, 188 Ill. 2d 423, 438 (1999) (practice of law includes services rendered to clients out of court); *In re Discipio*, 163 Ill. 2d 515, 523 (1994) (completion of forms and gathering of information necessary to do so was practice of law because it required legal knowledge and skill).

¶ 69    He responds, first, that his actions did not constitute the unauthorized practice of law because he did not file an appearance as attorney for TCI in that case. Rather, he appeared only as a *pro se* litigant until he learned that *pro se* representation of a corporation was not permitted. Second, respondent argues that he did not violate Rule 5.5(a) because he did not intend to engage in the unauthorized practice of law. Third, he argues that the Administrator failed to prove that he was suspended from the practice of law before the Seventh Circuit and, thus, he cannot be found in violation of Rule 5.5(a).

¶ 70    As a threshold matter, there is some question as to whether respondent has been admitted to the roll of practicing attorneys before the Seventh Circuit. This question was first raised before the Review Board. The Administrator's petition to this court contains as an exhibit a copy of a letter dated April 5, 2011, from Christine O'Donnell, Administrative Analyst for the Clerk of Court for the United States Court of Appeals for the Seventh Circuit. The letter states that the Clerk of Court has no record of the admission of Robert C. Thomas, and that records dating back to the early 1970s were searched.

-12-

¶ 71    In his answer to the petition for leave to file exceptions, respondent describes the letter as "sculpted and deceptive" and says it was "designed by counsel for the Commission." He does not say when he was admitted before the Seventh Circuit, but claims to have appeared there and presented cases since the 1970s.[2] He also states that the address given for him in the letter was not his address at the time he was admitted, but does not explain why, if he were a member of the bar in that jurisdiction, it would not have his current address. In conclusion, he calls the document "irrelevant and spurious."

¶ 72    Of course, the burden is on the Administrator to prove any misconduct by clear and convincing evidence. *In re Timpone*, 208 Ill. 2d 371, 380 (2004). The letter is not authenticated and it was not in evidence before the Hearing Board. Further, while respondent might have resolved the confusion on this matter by producing a record of his long-ago admission before the Seventh Circuit, he has no burden of production. We, therefore, express no opinion as to whether respondent has been admitted to practice before the Seventh Circuit.

¶ 73    Turning to the merits of count II, our review of the documents filed by respondent in the Seventh Circuit case reveals that respondent consistently identified himself as the president and sole shareholder of TCI and not as its attorney. He acknowledges that he did not inform the Seventh Circuit of his suspension, but notes that he was careful to present himself to that court as a *pro se* litigant, not as a practicing attorney.

¶ 74    We see two possibilities. First, respondent did not know that he could not represent TCI *pro se*. He states that he reviewed only the Federal Rules of Civil Procedure and the local rules of the Seventh Circuit, which did not preclude his *pro se* appearance. If this is the case, his skills as a lawyer are called into question because a lay person could find the answer on the internet in a few seconds. He complains that the limitation on *pro se* representation is found in a "court decision," as if he could not be expected to include judicial opinions in his legal research. He calls the holding in the case a "decisional restriction," as if binding case law is not as authoritative as local rules. A cursory search of a major legal database, however, reveals hundreds of cases from many state and federal courts imposing the same restriction. If respondent failed to locate any of these cases, his research was superficial at best.

¶ 75    The second possibility is that respondent knew the corporation could not proceed *pro se* and he hoped to finesse the question of his status by not entering an appearance as the corporation's attorney while, in effect, acting as such. If so, he engaged in the unauthorized practice of law before the Seventh Circuit while feigning to appear *pro se*.

¶ 76    The Hearing Board concluded that even if the first of these two possibilities was true, respondent engaged in the unauthorized practice of law. Citing *In re Cheronis*, 114 Ill. 2d 527, 535 (1986), for the proposition that ignorance of the law does not excuse attorney

---

[2]Our own research reveals only one case in the Seventh Circuit in which respondent is listed as the attorney. See *Thomas Consolidated Industries, Inc. v. Koster Group, Inc.*, 93 F. App'x 926 (7th Cir. 2004). In addition, he appeared *pro se* in *Thomas v. Zaruba*, 188 F. App'x 485 (7th Cir. 2006) (appeal from dismissal of petition for writ of *habeas corpus*, challenging conviction for driving while license revoked).

misconduct, the Hearing Board stated that respondent was obligated to educate himself on the relevant law, especially when his license had been suspended. The Hearing Board also rejected respondent's argument that the Administrator was required to prove that he intended to practice while suspended, again citing *Howard*, 188 Ill. 2d at 438 (respondent attorney's conduct during suspension, including giving advices to clients, is sufficient for finding of violation). Thus, the Hearing Board concluded, respondent violated Rule 5.5(a).

¶ 77 By its terms, Rule 5.5(a) does not require that the unauthorized practice be intentional or knowing. It makes no exception for the attorney who is uninformed or confused about his status. In effect, the rule creates a sort of "strict liability" for attorneys. Because "[i]t is vital to the well-being of society that an attorney, who is an officer of the court and a part of our judicial system, should maintain the most scrupulous care in conducting his professional and business affairs[,] *** [a]n attorney can be subject to discipline though his misconduct is based merely upon an honest mistake." (Internal quotation marks omitted.) *In re Witt*, 145 Ill. 2d 380, 395-96. Thus, when the rule itself does not require a showing of intent or knowledge, the absence of dishonest intent is appropriately considered in determining the nature and severity of the sanction imposed. *Id.* at 395-96.

¶ 78 More recently, in *Howard*, the respondent attorney was suspended from the practice of law for two years, with all but the first five months stayed. *Howard*, 188 Ill. 2d at 426. During his suspension, he met with clients, accepted fee advances, and offered legal advice. *Id.* at 438. He attempted to explain his conduct by stating that he was merely trying to keep his practice afloat during the relatively brief suspension. *Id.* at 439. He also noted that he had not appeared in court, filed any motions, or taken any depositions. *Id.* at 432-33. This court concluded that there was no doubt that he intentionally practiced law during his suspension. *Id.* at 438. Significantly, our concern was whether he intentionally performed tasks or provided services that constituted the practice of law, not whether he intentionally violated the terms of his suspension. *Id.* at 438-39. That is, even though the respondent believed that his conduct was permissible because his five-month suspension was not subject to the strictures of Supreme Court Rule 764, which applies to suspensions of more than six months' duration (Ill. S. Ct. R. 764 (eff. Aug. 27, 1990)), his "ignorance of the law" did not excuse his conduct. *Id.* at 439. We commented that the common maxim that ignorance of the law is no excuse is " 'particularly true in a case where the person who claims lack of knowledge of a relevant directive is a practicing attorney.' " *Id.* (quoting *Cheronis*, 114 Ill. 2d at 535).

¶ 79 Thus, it has long been established that it is the individual attorney's professional responsibility to make certain that he is licensed to practice in the jurisdiction before undertaking any professional duties. If there is any doubt whatsoever about his status, a telephone call to the clerk of this court would resolve the issue for him. We, therefore, conclude that the Hearing Board's finding that respondent violated Rule 5.5(a) is not against the manifest weight of the evidence.

¶ 80 Even if his conduct in the Seventh Circuit case constituted the practice of law, respondent argues in the alternative that his suspension from the practice of law in Illinois did not mean that he was suspended from practice before the Seventh Circuit. He notes that Rule 5.5(a) forbids the practice of law in a jurisdiction "where doing so violates the regulation of the legal profession in that jurisdiction" (Ill. Rs. Prof'l Conduct R. 5.5(a) (Aug. 1, 1990)), and

that the Seventh Circuit is its own licensing jurisdiction. He argues that the Administrator did not prove that his filings violated the regulation of the legal profession in the Seventh Circuit.

¶ 81    In count II, paragraph 19, of the complaint, the Administrator alleged that "[a]t the time Respondent prepared and filed the motions described in Paragraphs 17 and 18, above, he was suspended from the practice of law in Illinois and the Northern District of Illinois and was ineligible to represent Thomas Consolidated." In his answer to the complaint, respondent stated under count II, paragraph 18,[3] that he "[a]dmits that he was suspended but denies he was unable to represent *pro se* until so advised by the Seventh Circuit Court of Appeals, which was his status untile [*sic*] the court ruled on January 3, 2006." This answer, the Administrator argues, is an admission that he was suspended from practice in the federal courts as well as the state courts.

¶ 82    We begin by noting that a federal court of appeals does not license individuals to practice law. Rather, it admits qualified individuals to practice. An attorney is eligible for admission to the bar of the Seventh Circuit "if that attorney is of good moral and professional character and is admitted to practice before the Supreme Court of the United States, the highest court of a state, another United States court of appeals, or a United States district court." Fed. R. App. P. 46(a)(1). In turn, an attorney may be admitted to the bar of the United States District Court for the Northern District of Illinois if he is a member "in good standing of the bar of the highest court of any state." N.D. Ill. Loc. R. 83.10(a).

¶ 83    Thus, if respondent was not admitted to practice before the Seventh Circuit before he filed the motions, he would not have been eligible for admission to practice before the Seventh Circuit while his license to practice was suspended in Illinois. If he were already a member, he would have been "subject to suspension or disbarment" when he was "suspended or disbarred from practice in any other court." Fed. R. App. P. 46(b)(1)(A). The rules of the Seventh Circuit, of which respondent had a duty to be informed, provide that:

> "Whenever it is shown to this court that any members of its bar have been disbarred or suspended from practice, or their names have been stricken from the roll of attorneys, in any state, or the District of Columbia, they will be forthwith suspended from practice before this court. They will thereupon be afforded the opportunity to show cause, within 30 days, why their names should not be stricken from the roll of attorneys admitted to practice before this court. Upon the attorney's response to the rule to show cause, or upon the expiration of the 30 days if no response is made, this court will enter an appropriate order." 7th Cir. R. 46(d).

¶ 84    Illinois Supreme Court Rule 764(f)(4) requires that within 21 days of the effective date of an order of discipline, a disciplined attorney must notify "all other jurisdictions" in which he is licensed to practice of his "inability, during the period of discipline, to practice law in the State of Illinois." Ill. S. Ct. R. 764(f)(4) (eff. Aug. 27, 1990).

¶ 85    Under Circuit Rule 46, respondent would have been suspended "forthwith" as soon as

---

[3]Respondent's answer contained two paragraphs numbered 18, the second of which corresponds to paragraph 19 in the complaint.

it was "shown" to the Seventh Circuit that he had been suspended in Illinois. The only reason he was not formally suspended in the Seventh Circuit was his own failure to carry out his duty and obligation to inform that court of his suspension. When he filed the first motion in the Seventh Circuit case, he was indisputably aware that he was suspended in Illinois and that he had failed to comply with Supreme Court Rule 764(f)(4). We conclude that respondent's practice of law before the Seventh Circuit was misconduct in violation of Rule 5.5(a).

¶ 86    The Administrator also charged that respondent's unauthorized practice of law violated Rules 8.4(a)(4) and 8.4(a)(5) as well as Supreme Court Rule 770.

¶ 87    Rule 8.4(a)(4) defines one type of lawyer misconduct as "conduct involving dishonesty, fraud, deceit or misrepresentation." Ill. Rs. Prof'l Conduct R. 8.4(a)(4) (eff. July 1, 1990). Because the Review Board concluded that respondent did not violate Rule 5.5(a), it did not consider whether he violated this rule. However, in its discussion of count I, the Review Board relied on *In re Cutright*, 233 Ill. 2d 474 (2009), to conclude that respondent's "mere indifference" as to the truth of the certificate of service that he signed could not constitute a violation of Rule 8.4(a)(4). The Review Board understood *Cutright* to mean that a violation of Rule 8.4(a)(4) requires evidence that the conduct was intentional. By this logic, one could be in violation of Rule 5.5 based on mere indifference to one's suspended status, but not be in violation of Rule 8.4(a)(4). We disagree. *Cutright* does not require such a narrow reading of the rule.

¶ 88    Attorney Cutright was charged with violating Rule 8.4(a)(4) and other rules as a result of his preparation of the tax returns of a judge before whom he appeared. He did not disclose this fact to opposing counsel. *Id.* at 481-83. The Hearing Board found other violations, but concluded that the attorney did not intend to deceive when he failed to inform opposing counsel; "rather, he was unaware of his ethical obligations." *Id.* at 483. The Hearing Board concluded that the Administrator had not proven a violation of Rule 8.4(a)(4). The Review Board agreed, concluding that "while ignorance is no excuse, neither is it a chargeable offense in this context." *Id.*

¶ 89    This court noted that in past cases, it had found a violation of Rule 8.4(a)(4) when some act or circumstance showed the respondent's conduct was "purposeful." *Id.* at 489 (citing *In re Rinella*, 175 Ill. 2d 504 (1997) (violation found when respondent knowingly provided false testimony before the Hearing Board)). In contrast, in another case, a violation was not found in the absence of evidence that the misconduct was intentional. *Id.* (citing *Witt*, 145 Ill. 2d 380 (no violation absent evidence that respondent judge's silence regarding a loan from an attorney was intended to perpetrate a fraud)). We did not, however, state as a general rule that Rule 8.4(a)(4) may be violated only by intentional dishonesty, fraud, deceit, or misrepresentation. We concluded that given the examples of these cases and in light of the manifest weight of the evidence standard, the Hearing Board's findings of fact and its legal conclusion that attorney Cutright had not violated Rule 8.4(a)(4) should stand. *Id.* at 490. We emphasized that our result was predicated on the manifest weight of the evidence standard by saying:

> "There is essentially no way to define every act or form of conduct that would be considered a violation of Rule 8.4(a)(4). Each case is unique and the circumstances

surrounding the respondent's conduct must be taken into consideration. That being said, based on the circumstances in this case, we decline to reverse the findings of the Hearing Board and the Review Board to conclude that Cutright violated Rule 8.4(a)(4)." *Id.*

¶ 90    We, thus, left open the possibility that a violation of Rule 8.4(a)(4) could be found without evidence that the underlying misconduct was intentional. In the present case, the facts are undisputed that respondent engaged in conduct that constituted the practice of law while his license was suspended by this court. These acts were not inadvertent; they were intentional. The effect of his conduct was to perpetrate a fraud upon the court, at least until the court determined *sua sponte* that he had been suspended from practice. As such, his acts constituted misconduct under Rule 8.4(a)(4). See *In re Gerard*, 132 Ill. 2d 507, 527-28 (1989) (intent to defraud or deceive is not an element of violation of Disciplinary Rule 1-102(a)(4);[4] constructive fraud, which may be inferred from the circumstances, is sufficient).

¶ 91    Rule 8.4(a)(5) defines misconduct as engaging in "conduct that is prejudicial to the administration of justice." Ill. Rs. Prof'l Conduct R. 8.4(a)(5) (eff. July 1, 1990). The Hearing Board found a violation of this rule, but did not explain how respondent's unauthorized practice of law before the Seventh Circuit prejudiced the administration of justice when the client involved was a corporation of which respondent was the president and sole shareholder. The answer is found in *Scandia Down*, the case cited by the Seventh Circuit in its order directing respondent to resolve the matter of his inability to represent TCI. In that case, the court noted that the sole equity investor in a corporation does "not represent other interests, such as those of creditors." *Scandia Down*, 772 F.2d at 1427. In the present case, TCI had filed for bankruptcy. Any recovery that might have been made in the litigation against the Herbsts would have been part of the bankruptcy estate, subject to the claims of TCI's creditors. Thus, respondent's failed attempt to represent TCI potentially harmed not only his own interests, but also the interests of TCI's creditors. As such, his misconduct was prejudicial to the administration of justice.

¶ 92    The Hearing Board also found a violation of Supreme Court Rule 770. Supreme Court Rule 770 is not itself a Rule of Professional Conduct. Rather, it is contained in article VII, part B, of our rules, which governs "Registration and Discipline of Attorneys." Rule 770 is titled "Types of Discipline" and provides that "[c]onduct of attorneys which violates the Rules of Professional Conduct contained in Article VIII of these rules or which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute shall be grounds for discipline by the court." Ill. S. Ct. R. 770 (eff. Apr. 1, 2004). The rule then lists eight levels of discipline ranging from disbarment to reprimand. Thus, one does not "violate" Rule 770. Rather, one becomes subject to discipline pursuant to Rule 770 upon proof of certain misconduct. We conclude that based on his violations of Rules 5.5(a), 8.4(a)(4), and 8.4(a)(5), respondent is subject to discipline by this court pursuant to Rule 770.

---

[4]The Disciplinary Rules were replaced on August 1, 1990, by the Rules of Professional Conduct. DR 1-102(a)(4) was the precursor to Rule 8.4(a)(4).

¶ 93                                    Count III

¶ 94        Commission Rule 54 states:

> "When the Administrator concludes that there is insufficient evidence to establish
> that the respondent has engaged in misconduct, the Administrator shall close an
> investigation. The Administrator shall notify the complaining witness of his decision
> to close an investigation. Closure by the Administrator shall not bar the
> Administrator from resuming the investigation if circumstances warrant. The
> Administrator shall report to the Commission actions taken under this rule." Attorney
> Registration and Disciplinary Comm'n R. 54.

¶ 95        In the present case, the Administrator gave the required notice to attorney Ropiequet, the
complainant, stating that the reported conduct appeared to have been an isolated instance and
had since ceased. The Administrator also gave the required notice to respondent, placing him
on notice that the investigation could be reopened "if circumstances warrant." Thus, the
Administrator fully complied with the procedural directives of this rule.

¶ 96        The Review Board, however, interpreted Commission Rule 54 to mean that "a closed
investigation can be reopened only when the Administrator acquires new evidence
concerning the conduct that was the subject of the closed investigation" and, further, that the
rule is not intended to allow the Administrator "to change his mind merely because there is
an indication that the Respondent may have engaged in misconduct in an unrelated manner."
As a result, because it concluded that it was improper for the Administrator to reopen the
2005 investigation, the Review Board did not reach the merits of this charge.

¶ 97        Our analysis of count III must address two separate issues: (1) Did the Review Board
correctly interpret Commission Rule 54? And (2) if not, did the Hearing Board properly find
that respondent engaged in the unauthorized practice of law when he represented the
Phillipses in proceedings after October 17, 2005?

¶ 98        We reject the Review Board's interpretation of Commission Rule 54 for three reasons.
First, the language of the rule does not require such a narrow reading. Second, the Review
Board reads Commission Rule 54 as creating substantive rights for respondents rather than
as setting out procedures for the Administrator to follow. Third, the mission of the
Commission and the duties assigned to the Commission by this court require that the
Administrator be permitted to reopen a closed investigation for good cause, including, but
not limited to, newly acquired evidence regarding the earlier alleged misconduct.

¶ 99        Commission Rule 54 provides that an investigation "shall" be closed if there is
insufficient evidence to establish misconduct. The rule instructs the Administrator to
terminate an investigation, with notice to all interested parties, if the investigation has not
yielded evidence that would justify referral to the Inquiry Board. In contrast, Commission
Rule 55 provides that "[w]hen the Administrator concludes that there is sufficient evidence
to establish that the respondent engaged in misconduct or the Administrator believes
consideration by the Inquiry Board is warranted, the Administrator shall refer the matter to
the Inquiry Board." Attorney Registration and Disciplinary Comm'n R. 55. Thus, these two
rules create a procedural mechanism that requires the Administrator to assess the state of the
evidence in each case and either close the investigation or refer the matter to the Inquiry

-18-

Board. This procedure carries out the policy of the Commission, as set out in the preamble to the Commission rules: "The courts, the public, the bar, and the respondents have a vital interest in an early determination of any charge which bears upon the fitness of an attorney to practice his profession." Attorney Registration and Disciplinary Comm'n R. 1, Preamble.

¶ 100    Commission Rule 54, however, does not limit the circumstances in which the Administrator may determine that an investigation should be closed. As the Administrator notes, an investigation may be closed for many reasons, only one of which is insufficient evidence of misconduct. The volume of complaints received by the Commission requires the Administrator to set priorities and allocate resources. An investigation into allegations of less serious misconduct may be closed so that other, more serious allegations may be pursued. In such cases, the mere fact that a complaint was filed with the Commission may be sufficient to put the respondent on notice not to repeat the conduct at issue. Or, as in the present case, the Administrator may close an investigation after concluding that the alleged misconduct was an isolated incident, not likely to be repeated, and that respondent has ceased the offending conduct.

¶ 101    Similarly, there are several circumstances that may justify reopening of a closed investigation aside from the acquisition of new evidence regarding the subject of the original complaint. Such circumstances include a decision by the Oversight Committee of the Commission or the filing of a new complaint against the same respondent.

¶ 102    The role of the Oversight Committee is to "assist the Commission in conducting an internal quality review of a representative sample of investigative matters concluded by the Administrator without reference to the Inquiry Board." ARDC Board Member Roster, Oversight Comm., http://www.iardc.org/bm_oversightcommittee.asp (last visited Jan. 17, 2012). Thus, after the Administrator has closed an investigation and given the notices required by Commission Rule 54, the Oversight Committee's quality review could result in the matter being reopened.

¶ 103    In addition, a new complaint of similar misconduct may suggest that the attorney is engaging in a pattern of misconduct, making the subject matter of the earlier investigation relevant. A new complaint about a different form of misconduct may reveal that the respondent attorney is struggling with alcoholism, gambling, or other issues that affect his ability to practice, placing the subject matter of the earlier investigation in a new light.

¶ 104    The language of Commission Rule 54 does not define or limit the circumstances that warrant the reopening of an investigation. This decision has been placed by this court in the sound discretion of the Administrator, whose actions are subject to review by the Oversight Committee, the Inquiry Board, and ultimately this court.

¶ 105    Not only is the Review Board's narrow reading of Commission Rule 54 not required by the language of the rule, such a narrow reading overlooks the procedural nature of the Commission rules, improperly imbuing the Commission with the authority to promulgate substantive rules regarding attorney discipline.

¶ 106    Commission rules are promulgated pursuant to Supreme Court Rule 751(e)(2), which provides that the Commission shall have the duty "to make rules for disciplinary proceedings not inconsistent with the rules of this court." Ill. S. Ct. R. 751(e)(2) (eff. Oct. 13, 1989).

Because these rules are to govern "proceedings," they are necessarily procedural, rather than substantive, in nature. See *In re Mitan*, 75 Ill. 2d 118, 125 (1979). As such, these rules set no standards for attorney conduct and confer no rights upon attorneys.

¶ 107    Respondent's arguments are predicated on a misunderstanding of the purely procedural nature of the Commission Rules. He argues that the "obvious purpose of Commission Rule 54 is to remove the threat of prosecution that any ARDC investigation implies–absent a change in circumstances," and accuses the Commission of "seeking omniescence [*sic*] and omipotent [*sic*] power over attorneys–for their entire lives."

¶ 108    In accordance with Commission Rule 54, respondent received notice that the investigation had been closed and he was placed on notice that it could be reopened. Apparently, respondent believes that the notice he received from the Administrator pursuant to the rule conferred upon him a substantive right, comparable to double jeopardy protection, that prevents the Administrator from reexamining the alleged misconduct in the future absent new evidence regarding the particular incident. He cites no authority for placing such substantive weight on the words of a Commission rule. Indeed, no such authority exists because the Commission is not empowered by Supreme Court Rule 751(e)(2) to create substantive rights via its procedural rulemaking.

¶ 109    Finally, our intent that the Administrator have discretion in the closure and resumption of investigations is consistent with this court's long-standing vision of the role of the Commission. As noted in *Mitan*, this court "has the inherent power to regulate the admission of attorneys to the practice of law and to discipline attorneys who have been admitted to practice before it." *Mitan*, 75 Ill. 2d at 123. The Commission and its officers "serve only as agents of this court in administering the disciplinary functions that have been delegated to them." *Id.* at 124. In effect, the Commission and its officers serve investigatory and screening functions, delegated to them by this court. The proceedings before the Hearing Board and the Review Board are "advisory only" to this court. *Id.* Therefore, "because of the nature of the proceedings before those to whom we have delegated the authority to act, we will not consider technical objections as to the practice and procedures before them, nor can such technical objections bind us or limit our authority to act." *Id.*

¶ 110    In *Mitan*, the Commission failed to comply with a Commission rule that required a hearing within 90 days of service of a complaint upon a respondent attorney. This court rejected the respondent's argument that the rule established "a mandatory statute of limitations, a limitation which would effectively bar this court from disciplining an attorney" merely because of an inadvertent procedural error by the Administrator's office. *Id.* At that time, Supreme Court Rule 753(c) (Ill. S. Ct. R. 753(c) (eff. May 21, 1975)), required that the Hearing Board set a hearing date "not earlier than 21 days after the filing of such complaint." Our rule did not place a limit on the length of time between the filing of the complaint and the hearing. *Id.* at 124-25. Thus, although the Administrator had not complied with the applicable Commission rule, he was in full compliance with this court's rules. This court viewed the Commission rule "not as a limitation on the authority or jurisdiction of this court, but as a procedural rule of the Commission directing the Administrator to conduct orderly and timely proceedings with due regard for the rights of the attorney under investigation." *Id.* at 125. The 90-day time limit was "not mandatory" and could not be construed "to be a

means of implementing a right to a speedy trial." *Id.* The failure to comply with the rule did not "deprive this court or its agents of the right or the power to further consider the charges against the respondent." *Id.*

¶ 111 Thus, the "right or power" of our agent, the Administrator, to further consider charges against a respondent attorney does not derive from the Commission's procedural rule, but from our delegation to the Administrator, under Supreme Court Rule 752(a), of the responsibility to "on his own motion, on the recommendation of an Inquiry Board or at the instance of an aggrieved party, investigate conduct of attorneys which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute." Ill. S. Ct. R. 752(a) (eff. Mar. 17, 1988). This responsibility is constrained by the constitutions of the United States and the State of Illinois and the rules of this court–not by the Commission's own procedural rules.

¶ 112 Having determined that it was permissible for the Administrator to reopen the investigation into respondent's representation of the Phillipses, we turn to the question of whether he engaged in the unauthorized practice of law when he represented them at a hearing, conducted a deposition, and appeared with them at their depositions after his suspension went into effect.

¶ 113 Rule of Professional Conduct 5.5(a) provides that a "lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." Ill. Rs. Prof'l Conduct R. 5.5(a) (Aug. 1, 1990). It is undisputed that respondent practiced law in Du Page County by appearing in court to represent the Phillipses, appearing with them at their depositions, and conducting the deposition of attorney Ropiequet after his suspension went into effect on October 17, 2005. Respondent argues that it is also undisputed that he believed that his filing of a "Petition for Hearing/Rehearing" stayed the suspension order.

¶ 114 Correspondence back and forth between respondent and counsel for the Administrator continued, with his rejecting every effort to inform him of his status. The October 20, 2005, letter from counsel advised him that the suspension was effective on October 17, 2005, and that the filing of an appeal does not automatically stay or recall the mandate. He describes this as merely "her opinion" and states that "she erroneously described the filing as a Petition for Rehearing–when in fact it was a petition for Hearing/Rehearing." Respondent elected not to seek independent legal advice from someone familiar with the applicable rules or to inquire directly of the clerk of the Supreme Court as to his status.

¶ 115 Although respondent knew that an order of suspension had been entered with an effective date of October 17, 2005, respondent chose not to take that simple step of verifying his status, even after the question was posed to him by opposing counsel and by a judge at a hearing. Instead, he incorrectly informed the judge that his suspension was stayed and now argues that the judge "permitted" him to appear, as if it were the judge's responsibility, not his own, to verify his status.

¶ 116 He attempts to excuse his conduct by stating that he "initially assumed" that "as in all other cases," the suspension order was "automatically stayed." Similarly, he states that when counsel for the Administrator called Supreme Court Rule 771 to his attention, he "examined

-21-

the Rule" and concluded that it did not apply because his petition asked for a "hearing" as well as "rehearing." He claims that he "rationally concluded" that when this court ordered the Commission to file a response to his petition, this meant that his petition was being considered pursuant to Rule 753(e)(5)(a)(iii).

¶ 117    His conclusion was not "rational." He either failed to understand or ignored the procedural posture of this case at the time he filed his petition.

¶ 118    Rule 753 describes the functions and procedures of the Inquiry, Hearing, and Review Boards of the Commission. Under Rule 753(e), review of a Review Board report is sought by filing a petition for leave to file exceptions with this court. Rule 753(e)(5) describes the rulings this court might make on such a petition: (a) "allows exceptions to an order or report of the Review Board," or (b) "denies leave to file exceptions." If this court allows exceptions, it may: (a)(i) "enter a final order," (a)(ii) "remand[ ] the matter with directions," or (a)(iii) "accept the matter for further consideration." Ill. S. Ct. R. 753(e) (eff. Sept. 1, 2006).

¶ 119    Respondent's petition, whether styled a "Petition for Hearing/Rehearing" or otherwise, sought review of this court's October 17, 2005, order of suspension. This order followed our allowing the Administrator's petition for leave to file exceptions, pursuant to Supreme Court Rule 753(e)(1), after the Review Board recommended a 12-month suspension. Thus, respondent's petition was not a petition to this court seeking review of a Review Board report and Rule 753 was not implicated. Further, our ordering the Administrator to respond to his petition was not an acceptance of the matter for further consideration and respondent had no reasonable basis for assuming so.

¶ 120    Rather, the governing rule at the time respondent filed his petition was Supreme Court Rule 771, "Finality of Orders and Effective Date of Discipline":

"(a) Finality. All orders imposing discipline pursuant to these rules, except orders entered in cases that were accepted by the court for further consideration pursuant to Rule 753(e)(5)(a)(iii), are final when filed by the clerk of the court, and the mandates in all such cases shall issue at the time the orders are filed. No petition for rehearing pursuant to Rule 367 may be filed in such case, nor will any motion or other paper submitted after an order is filed automatically stay or recall the court's mandate. The finality of orders imposing discipline entered in cases accepted by the court for further consideration pursuant to Rule 753(e)(5)(a)(iii) shall be governed by Rules 367 and 368." Ill. S. Ct. R. 771(a) (eff. Apr. 1, 2004).

¶ 121    As noted, the clause "except orders entered in cases that were accepted by the court for further consideration pursuant to Rule 753(e)(5)(a)(iii)" is inapplicable in the circumstance in which this court has already entered a final order pursuant to Rule 753(e)(5)(a)(i) after allowing the Administrator's petition for leave to file exceptions. The operative language is that no motion or paper submitted after an order is filed will "automatically stay or recall the court's mandate."

¶ 122    We conclude that respondent violated Rule of Professional Conduct 5.5(a) by his representation of the Phillipses after October 17, 2005. We cannot know whether he subjectively believed that his suspension had been stayed, but if he did believe so, his belief

was entirely unreasonable. He willfully ignored all attempts to inform him of his status. His reading of the rules was self-serving and incorrect. Further, he made no effort to ascertain the answer directly from the clerk of this court.

¶ 123   In addition, respondent's unauthorized practice of law involved dishonesty or misrepresentation in violation of Rule 8.4(a)(4), because respondent willfully ignored every attempt to inform him that his actions violated his suspension and chose, instead, to continue to engage in the practice of law. The fact that he may have convinced himself that his suspension was stayed does not alter the underlying dishonesty because his belief, even if sincere, was entirely unreasonable. Further, his conduct was prejudicial to the administration of justice, in violation of Rule 8.4(a)(5), because it placed the interests of his clients in jeopardy. See, *e.g.*, *Scandia Down*, 772 F.2d at 1427 (attorney's unauthorized representation of defendant could have resulted in default judgment for plaintiff). Thus, he is subject to discipline pursuant to Supreme Court Rule 770.

¶ 124                                   Appropriate Sanction

¶ 125   The Hearing Board, which found all three counts proven, recommended a two-year suspension. The Administrator asks for a three-year suspension, until further order of this court, noting that as in the earlier case that resulted in his 18-month suspension, respondent rationalizes his misconduct and denies all wrongdoing. He places blame on others, yet refused to accept others' efforts to forestall his misconduct.

¶ 126   Although no violation of Rule 5.5(a) can be said to be minor, respondent's violations are certainly not as serious as they might have been. The party most affected by the misconduct in count II was TCI, respondent's own bankrupt corporation. The violations in count III occurred within a few days of the effective date of the suspension and respondent terminated his representation of the clients immediately upon our denial of his motion for reconsideration.

¶ 127   On the other hand, his conduct as to count II was calculated to conceal from the Seventh Circuit that he had been suspended by this court, and as to count III, he willfully ignored his suspension, even when it was raised by the circuit court and opposing counsel and even after he was correctly informed by counsel for the Administrator that continued representation of clients was a violation of his suspension. In addition, he continues to deny any misconduct and refuses to accept any responsibility for his actions.

¶ 128   We conclude that a suspension for one year is sufficient discipline for respondent's misconduct.

¶ 129                                     CONCLUSION

¶ 130   Respondent Robert C. Thomas is suspended from the practice of law for one year.

¶ 131   In addition to complying with Supreme Court Rule 764(f)(4) by notifying "all other jurisdictions in which [he] is licensed to practice law" (Ill. S. Ct. R. 764(f)(4) (eff. Aug. 27, 1990)), of his suspension, respondent shall verify his status before the United States Court of Appeals for the Seventh Circuit. Within 30 days of the effective date of this order, he shall

submit to this court and to the Administrator authenticated documentation of the date of his admission to the roll of attorneys for that court and his current status there. If he was not a member of that court at any time he appeared there as an attorney, he will self-report that fact to the Seventh Circuit, this court, and the Administrator.

¶ 132      Respondent suspended.